## CHARLESTON.

A. G. & R. R. FLANAGAN *v.* C. C. BROWN *et als.*

(No. 6409)

Submitted April 23, 1929.     Decided April 30, 1929.

*A. D. Daly,* for appellants.

*James H. Miller,* filed brief for appellees, but died prior to the hearing of the case.

WOODS, PRESIDENT:

A. G. and R. R. Flanagan instituted this suit to restrain the defendants from exercising any dominion over a certain plot of ground, designated as "Central Park", on the plat filed with the deed under which plaintiffs hold, and also to require the houses built thereon to be removed, and that the deeds under which defendants claim be cancelled as clouds upon the title to the property of the plaintiffs and others enti-

tled to the use of said park. Plaintiffs appeal from an order entered on the hearing denying the relief sought and dismissing their bill.

Sometime in 1903, thirty individuals were interested in a scheme to take over and make a summer resort out of what was then known as the Barger's Spring property, in Summers county, and incorporated in 1904 as the Greenbrier Springs Company. Each stockholder paid in $300.00 to be used in purchasing and improving the property, with the understanding that each was to receive three shares of stock in the corporation and a lot to be drawn from the subdivided portions consisting of some sixty-eight or more lots. It was also the understanding that lots drawn could be exchanged for more desirable ones. In 1905, the several lots so drawn, or those taken on exchange, were transferred, by one deed, to the several stockholders as of that date. A plat, showing the location of the lots, streets, parks, etc., was referred to in the deed and made a part thereof, and was recorded along with the deed. In the description of A. G. Flanagan's lot the "Central Park" shown on. the plat was mentioned as contiguous thereto, and the plat likewise showed the same. A dance pavilion was erected on the park site, and remained there for some fifteen years. A deed of trust was executed on behalf of the corporation, in 1911, to secure a certain loan, and the property was later sold thereunder. Sometime thereafter the pavilion was moved further down the hill and across the road from "Central Park". C. C. Brown, one of the defendants, in 1925, bought a part of the property, including "Central Park", from the purchasers under the trust deed. He, in turn, made sale of the same to the other defendants, who built thereon. Flanagan testified that he had no notice of any claim of ownership over the park property until he saw the houses thereon.

The plaintiffs, while stockholders in the Greenbrier Springs Company, were in fact purchasers of the lots so transferred to them by the corporation. They took the same in reference to the plat filed as any other purchaser. It is well settled that where a purchaser of a town lot has purchased with reference to a *plat* and dedication, without reservation, he

has acquired an express private easement in all the streets, alleys and parks, and may enjoin the closing or obstruction thereof by the owner, without waiting for municipal acceptance of the dedication. All such streets and alleys are presumed to be appurtenant to his lot, and, together with the parks, were considered in the purchase of his lot as a part of the value. *Rudolph* v. *Glendale Improvement Company,* 103 W. Va. 81. Not only did the corporation file the plat, but it made reference in the deed to the tract contiguous to A. G. Flanagan as ''Central Park'' in describing the latter's property. There is evidence of user by the public. The pavilion erected thereon was used for dancing, Sunday School, and the like.

The property rights of A. G. Flanagan in the park could not have been transferred by the deed of trust of 1911, or the deed made after the sale thereunder, even though the corporation had attempted so to do, unless it could be shown that the parties interested consented thereto. 18 C. J. 61; 9 A. & E. Ency. 57, *et seq.* This deed of trust, under which defendants claim, reserved not only the lots and conveyances made to the individual stockholders, but the *rights,* privileges, franchises, passways, etc., as set forth in the former deeds, contract and conveyances. So a waiver could not possibly be construed against Flanagan on account of his being a stockholder in the enterprise. The case of *Briers* v. *Alderson,* 101 W. Va. 662, relied on by the appellees, has no bearing on the situation thus presented. The plat, under *Rudolph* v. *Glendale Improvement Company, supra,* was a part of the conveyance to Flanagan.

While it is contended that Flanagan ought to have known of the building on the ''Central Park'' adjoining him, there is no positive proof that he did. He denies any knowledge thereof until it had been erected. Under the case made, the decree of the lower court must be reversed, the bill re-instated, and a decree entered here granting the relief prayed for.

*Reversed; decree entered.*